# Wiley *against* Christ.

A contract for the purchase and sale of land, executed by the delivery of a deed and receipt of bonds for the purchase money, may be rescinded as to the parties themselves, by a cancellation of the bonds and a re-delivery of the deed to the grantor. If the grantee should, after such sale, marry the grantor, and thus get possession of the estate and of the deed, he would not thereby be reinvested with the title.

It is not error to instruct a jury that the declarations of a party against his interest should, as evidence, have more weight than declarations made in conformity with his interest.

ERROR to the common pleas of *Adams* county.

Ejectment for a house and lot by William Wiley and others against Lewis Christ and others.

The plaintiffs are the heirs at law of Jane M'Creary, under whom both parties to this suit claim title.

In 1813 Jane M'Creary sold and conveyed the property in controversy to Lewis Christ, and received his bonds for the purchase money. Lewis Christ went into possession, and remained in the possession for some time. There was no evidence that he had ever paid any part of the purchase money; and he re-delivered the possession to Jane M'Creary, and removed to Baltimore, where he remained about eighteen months. Proof was given by the plaintiffs to establish the

[Wiley v. Christ.]

fact, that the contract of sale had been rescinded by the parties at the time Christ went to Baltimore, and that the rescision of it was evidenced by the fact of the re-delivery of the deed by Christ to Jane M'Creary, and of the bonds by Jane M'Creary to Christ, and his agreement that the contract should be rescinded, because he was not able to pay the purchase money. When Christ returned from Baltimore, he married Jane M'Creary ; and again, by virtue of his marriage, got possession of the property, and remained in the possession until Jane Christ, his wife, died, without issue, leaving Lewis Christ her husband surviving her.

After the evidence was given, the plaintiffs requested the court to charge the jury:

" If the jury believe that in the fall of 1813 Jane M'Creary sold the property in dispute to Lewis Christ, and made a conveyance of it to him, and received his bonds for the purchase money ; and at a subsequent time the said Lewis Christ and Jane M'Creary agreed to rescind the contract, because of his inability to pay the purchase money, or for any other reason, and the deed was re-delivered to Jane M'Creary, and the bonds given back to Lewis Christ, with this intention : then the fact of the deed remaining in her possession at the time of her marriage and afterwards, or having afterwards come to his possession, would vest in him no title."

The court said : "the title, it is admitted, was once in Jane M'Creary. Both parties claim under it. They also agree that a deed was made in 1813, by Jane M'Creary to Lewis Christ. If the deed was executed and delivered to defendant, and his bonds taken for the purchase money, then he was duly vested with the legal estate. This position does not seem to be controverted, for the witnesses on both sides prove it. The question, then, is, whether this estate, so vested in defendant, was divested ? or, in other words, whether the estate became again vested in Jane M'Creary? On one side it is said, the estate never was divested from the defendant, or revested in Jane M'Creary. The plaintiffs say it did become revested in her. On the part of the plaintiffs it is alleged, that the contract was rescinded by mutual consent of the parties, and that the deed was cancelled and given up. On the other side it is insisted that the deed was never cancelled, and was never given up in evidence that the contract was rescinded.

"We are not required by the course of the argument to say what would be the effect of a mere giving up of the deed by the mutual consent of the parties : whether such act would revest the estate or not. The respective parties seem to be positive and confident upon the facts of the case, as mutually alleged by them, and the case is put by them on the evidence. After it was proved that Jane M'Creary had made and executed a deed to the defendant, her declarations against her interest were relied on, on the part of the defendant, and, without objection, her declarations have been given in favour of her interest; tending to show that the deed was given up and

cancelled, and the estate revested in her. It is not for us to say *now*, whether this kind of evidence was admissible; being before you, you will give it such weight as it is entitled to.

" It is a rule of law, however, that the declarations of a person against his interest, are generally stronger evidence than declarations in favour of one's interest. It is not contended that, if the deed was cancelled and actually given up, and the contract rescinded, " the fact of the deed remaining in her possession, at the time of her marriage, and afterwards, or its having afterwards come to his possession, would vest in him any title ;" nor, " that any parol declarations of Jane M'Creary, after her marriage with him, would vest in defendant any title which would continue beyond her lifetime." The allegation on one side is, that the deed was not cancelled or given up in avoidance of the contract ; but that it was simply delivered to Jane M'Creary by Christ, to be kept and held by her till some future period ; and when some future event should have taken place, then to be valid. That the giving up the deed was not to destroy it, but that she would keep and preserve it for future use. If this is the fact; if this is the import of the evidence, then it is plain the deed was not cancelled, and the estate was not revested in Jane M'Creary, and of course never vested in the present plaintiffs. But the plaintiffs say the facts and evidence are the other way : that the deed was actually given up ; the contract actually rescinded ; and the estate revested in Jane M'Creary."

*Watts* and *Penrose*, for plaintiffs in error, contended, that the plaintiffs were entitled to have an affirmative answer to the point put to the court, and cited, 4 *Kent's Comm.* 194, *note;* Smith *v.* Thompson, 2 *Serg. & Rawle* 49 ; Powers *v.* M'Ferran, *Id.* 44 ; Simpson *v.* Wray, 7 *Serg. & Rawle* 336 ; Bellas *v.* Hays, 5 *Serg. & Rawle* 427.

*Stephens,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is, that the court below did not give an affirmative instruction to the jury on the point submitted by the plaintiffs in error, who were also the plaintiffs below.

The point submitted by the plaintiffs was, that if the jury should believe, as was contended by the plaintiffs, that the deed of conveyance from Jane M'Creary, for the land in dispute, to the defendant Lewis Christ, had been re-delivered by him to her, and at the same time the bonds which she held upon him for the payment of the purchase money of the land, had been given up by her to him, for the purpose of being cancelled, and that they were cancelled accordingly; with a view of setting the purchase of the land by Lewis Christ from Jane M'Creary aside ; the circumstance of Jane M'Creary's retaining the deed in her possession, without destroying it, until after her marriage with Christ, and his thereby regaining

[Wiley v. Christ.]

the possession of it, would not reinvest him with the title to the land. To this the court, in addressing the jury, say : " it is not contended that if the deed was cancelled and actually given up, and the contract rescinded, that the fact of the deed remaining in her possession at the time of her marriage and afterwards, or its having afterwards come to his possession, would vest in him any title; nor that any parol declarations of Jane M'Creary, after her marriage with him, would vest in defendant any title which would continue beyond her lifetime." It is argued that this was not an explicit and direct answer to the plaintiffs' point. It appears to me, however, that the jury could not misapprehend the meaning of the court in regard to it ; and if so, that is certainly all that can or ought to be required. It is impossible, I think, to understand the charge of the court otherwise than as if they had instructed the jury almost in so many words, that the proposition contained in the plaintiffs' point was not contended against by the defendant's counsel, and that the deed being in the possession of Jane M'Creary at the time of her marriage with Lewis Christ, and the deed thus coming into his possession again as her husband, would not vest in him the title to the land. We therefore think this error is not sustained.

Another question was broached by the counsel for the plaintiffs in the argument, which does not seem to have been put to the court below for their answer or direction to the jury on it. That is, whether the mere cancelling of the deed under which Lewis Christ held the title to the land in question at one time, divested him of it and revested it in Jane M'Creary the grantor. That it would not, I think, is fully established by numerous authorities, as well as by the nature and inefficacy of the thing itself, under the provisions of our act against frauds and perjuries, to produce such an effect. Bolton *v.* Carlisle, 2 *H. Bl. Rep.* 263, 264 ; Clavering *v.* Clavering, *Prec. in Ch.* 235 ; Dando *v.* Tremper, 2 *Johns. Rep.* 86 ; Gilchrist *v.* Bulkley, 5 *Conn. Rep.* 262 ; Botsford *v.* Morehouse, 4 *Conn. Rep.* 350 ; Farrar *v.* Farrar, *N. Hamp. Rep.* 191 ; Holbrook *v.* Tirrell, 9 *Pick. Rep.* 105, and 4 *Kent's Comm.* 452, where these authorities are all referred to in note (*a*). It may, however, be, that the party who has, for a full price received by him of the grantor, consented to the destruction of a deed never put on record vesting him with the title to real estate, for the purpose of reinvesting the title in the grantor, would not be permitted to show by parol or secondary proof, the former existence and contents of the deed ; if it appeared to the court, from his own showing, that he had destroyed it, or given his assent to the destruction of it, for the purpose of reinvesting the grantor with the title ; or if it appeared from his evidence that the deed was destroyed without his consent, and the court therefore should admit parol evidence to supply the want of the production of the deed itself ; and the adverse party afterwards show most clearly that the deed was destroyed by the consent of the grantee for the purpose of divesting him of the title to the estate and revesting it again in the grantor, the court would proba-

[Wiley v. Christ.]

bly instruct the jury that if they believed the fact to be so, they should hold the grantee bound by such act and assent upon his part ; and that in equity and good conscience he was precluded from setting up and claiming under a deed which he had voluntarily destroyed, and for doing of which he had received a consideration equal to the value of the estate.

If it be objected to this, that it is passing an estate in fee simple in land without any writing to that effect being signed by the party granting the same, or by his agent authorized by writing to do it for him, and therefore contrary to the act against frauds and perjuries, I say that I think it may be considered as coming within the principle upon which it has been held that parol contracts executed in whole, or to a certain extent in part only, are not within the mischief intended to be provided against by the act.   For instance, if in the present case it had been clearly proved that, after Jane M'Creary had for a full price conveyed by her deed the land to Lewis Christ in fee simple, and delivered to him the possession thereof, without any part of the price being actually paid, but his bonds given to her securing the payment of it, they had, under a verbal agreement made between them, cancelled *the bonds, and the deed of conveyance* unrecorded *in pursuance* thereof had been given up by him to her, together with the possession of the land, believing that this was sufficient, and all that was necessary to reinvest her with the title to the land ; it seems to me that it would have been such an execution of the agreement as would have taken it out of the act against frauds.   The cancelling of the bonds was equivalent to the payment of a similar amount of money by Jane M'Creary to Lewis Christ to obtain the land again.   He owed it to her, and she in consideration of getting the land back released him from the payment of it.   In short, the land was agreed to be taken, and the possession of it, together with the title, in pursuance thereof were actually given up and received in payment and full satisfaction of the bonds : upon which the bonds were accordingly cancelled.   Although it was a mistake, common probably to both the parties, to think that all this was sufficient to reinvest Jane M'Creary with the legal title to the land ; yet I cannot avoid believing that it was sufficient in equity, at least, to make her the *cestui que use* and Lewis Christ a trustee for her use.

A second error has been assigned, that the court erred in telling the jury that " the rule of law is, that the declarations of a person against his interest are generally stronger evidence than his declarations in favour of it."   There certainly was no error in this that could prejudice the plaintiffs, who claimed the land as the heirs of Jane M'Creary and the benefit of declarations made by her in her own favour; for the court might have gone further and have told the jury that the rule of law in such case was, that the declarations of a party, or of those under whom he claimed might be given in evidence against him, but could not be evidence in his favour at all. This rule and distinction are founded upon a principle of human na-

ture which seldom prompts a man to say any thing against his own interest, unless it be true ; and being so, it is therefore evidence entitled to full credit : while in other cases generally, so great is the moral infirmity of human nature, that the declarations of a party, or of those under whom he claims, in favour of his interest, are entitled to no credit whatever in judicial proceedings; and cannot, if objected to, be received as evidence at all—not even when made on oath. There was, then, no error in the court, after the declarations had been received, cautioning the jury against giving too much credit to those made by the party in his own favour, by telling them that they were not as strong evidence for him, as his declarations against his interest would have been, when, in law, as evidence, those made in his favour were entitled to no credit whatever.

Judgment affirmed.